# Illinois Official Reports

## Appellate Court

---

**Hasbun v. Resurrection Health Care Corp.*, 2015 IL App (1st) 140537*

---

Appellate Court
Caption

VERONICA HASBUN, Plaintiff-Appellant, v. RESURRECTION
HEALTH CARE CORPORATION, PCC COMMUNITY
WELLNESS CENTER, and YAM S. TONG, Defendants-Appellees.

District & No.

First District, Second Division
Docket No. 1-14-0537

Filed

June 23, 2015

Decision Under
Review

Appeal from the Circuit Court of Cook County, No. 13-L-12633; the
Hon. Kathy M. Flanagan, Judge, presiding.

Judgment

Appeal dismissed.

Counsel on
Appeal

Jacob B. Shorr, of Asony & Associates, of Chicago, for appellant.

Catherine L. Garvey and Anthony J. Longo, both of Cassiday Schade
LLP, of Chicago, for appellee.

Panel

PRESIDING JUSTICE SIMON delivered the judgment of the court,
with opinion.
Justices Neville and Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1 On December 4, 2009, plaintiff Veronica Hasbun filed a four-count complaint against defendants Resurrection Health Care Corporation (Resurrection), PCC Community Wellness Center (PCC), and Dr. Yam S. Tong, sounding in assault and battery, negligent supervision, negligence, and intentional infliction of emotional distress. The case was removed to the United States District Court for the Northern District of Illinois (District Court) pursuant to the Westfall Act (28 U.S.C. § 2679 (2006)) before being remanded to the circuit court of Cook County. On June 3, 2011, the trial court dismissed the counts for assault and battery and intentional infliction of emotional distress. The negligence and negligent supervision counts were stayed after plaintiff filed a second complaint in federal court sounding in negligence and negligent supervision against the United States and Resurrection. Eventually, plaintiff's second federal complaint was amended to include only a single count for negligence, which was dismissed by the District Court and from which no appeal was filed in the federal courts. In the circuit court, the case was then removed from the stay calendar and reinstated. The circuit court dismissed the remaining counts sounding in negligence and negligent supervision on January 13, 2014, pursuant to the doctrine of *res judicata* and entered final judgment on the matter.

¶ 2 Plaintiff appealed the June 3, 2011, and January 13, 2014, circuit court orders. However, on appeal, plaintiff only presents argument that the trial court erred in dismissing the assault and battery and intentional infliction of emotional distress counts on June 3, 2011. Plaintiff asserts that the circuit court erred in holding that Resurrection could not be liable for Dr. Tong's sexual assault of plaintiff and that, as a matter of law, hospitals should not be able to avoid liability for sexual assault committed by physicians during the course of treatment. For the following reasons, we dismiss plaintiff's appeal.

¶ 3                               I. BACKGROUND
¶ 4             A. Plaintiff's Complaint in the Circuit Court of Cook County
¶ 5 On December 4, 2009, plaintiff filed a four-count complaint in the circuit court of Cook County against defendants sounding in assault and battery, negligent supervision, negligence, and intentional infliction of emotional distress. Plaintiff alleged that she was experiencing abdominal pains on January 22, 2009, and made an appointment to see Dr. Tong, an obstetrician and gynecologist at PCC at Resurrection's West Suburban Medical Center. At her appointment, plaintiff initially entered the examination room with a female nurse. The nurse went over routine questions with plaintiff, including whether plaintiff had been pregnant or miscarried, and took plaintiff's blood pressure and weight. The nurse then left the examination room, telling plaintiff that she was going to bring the doctor in who would then begin the examination.

¶ 6 Dr. Tong entered the examination room alone and asked plaintiff, who was sitting on an examination table, whether she had any prior pregnancies or miscarriages. Plaintiff expected the nurse to come back into the room and monitor the exam but, despite the absence of a nurse, Dr. Tong forced plaintiff's feet into the stirrups and pulled plaintiff's thighs downward toward the end of the table. Dr. Tong did not say anything, but began his physical examination of plaintiff.

¶ 7        Dr. Tong eventually told plaintiff that she is "a very attractive woman" and asked if she had a lot of sexual partners. Dr. Tong began "playing with [plaintiff's] labia. He pulled and spread the skin and made comments such as, 'It smells good, very pretty, very nice and clean.' " Dr. Tong completed what plaintiff considered a typical digital examination of the vagina, but then continued to move his fingers in and out of plaintiff's vagina and wiggled them while inside of her. When he completed the examination, Dr. Tong remained standing between plaintiff's legs, which remained spread open. Dr. Tong discussed the exam results while he stroked her thighs and hair, leaned in close to plaintiff's face, and continued "smiling a lot" the entire time. Plaintiff alleged that Dr. Tong's unwanted and offensive intentional contacts continue to cause her pain and anguish and she sought damages in excess of $50,000.

¶ 8                                    B. Removal to Federal Court

¶ 9        On March 31, 2010, the case was removed in its entirety to the District Court. Pursuant to the Westfall Act (28 U.S.C. § 2679 (2006)), the United States Attorney General's delegate certified that Dr. Tong was acting within the scope of his employment at PCC, a private entity that receives federal grant money from the federal Public Health Service. Under section 2679(d)(2), the District Court substituted the United States as defendant in place of Dr. Tong and PCC. The United States moved to dismiss the action, alleging that plaintiff had failed to exhaust her administrative remedies as required by the Federal Tort Claims Procedure (Act) (28 U.S.C. § 2671 (2006)). The District Court denied the motion and granted plaintiff time to complete discovery regarding whether Dr. Tong was acting within the scope of his employment.

¶ 10       After the discovery period ended without plaintiff conducting any additional discovery, the United States renewed its motion to dismiss. On December 10, 2010, the District Court concluded that, because plaintiff failed to proffer any competent evidence challenging the government's scope of employment determination, substitution of the United States as defendant was allowed. *Hasbun v. United States*, No. 10 C 2000, at 4-7 (N.D. Ill. Dec. 10, 2013). However, the District Court granted the motion to dismiss without prejudice as plaintiff failed to contest the United States' contention that plaintiff had not exhausted her administrative remedies. The District Court "decline[d] to exercise supplemental jurisdiction over plaintiff's remaining state law claims against Resurrection Health Care Corporation and remand[ed] the case to the Circuit Court of Cook County, Illinois." The federal case was terminated and removed from the docket. *Id.* at 8.

¶ 11                          C. Remand to Circuit Court and the June 3, 2011,
                                        Dismissal of Two Counts

¶ 12       On remand, plaintiff and Resurrection continued litigation in the circuit court. Resurrection moved to dismiss plaintiff's complaint pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2010)), and on June 3, 2011, the circuit court granted Resurrection's motion in part and denied it in part. Citing to *Deloney v. Board of Education*, 281 Ill. App. 3d 775 (1996), and *Randi F. v. High Ridge YMCA*, 170 Ill. App. 3d 962 (1988), for the proposition that intentional torts are not to be considered within the scope of employment and are not proper for applying vicarious liability, the circuit court dismissed with prejudice counts I and IV, sounding in assault and battery and intentional infliction of emotional distress.

¶ 13     However, the court noted that the District Court determined that Dr. Tong was an employee of PCC, and thus, the United States, and acting within the scope of that employment at the time of the incident and made no ruling with respect to Resurrection. The circuit court reasoned that the District Court's finding that Dr. Tong was an employee of PCC and acting within the scope of his employment did not preclude a finding that there was joint employment or an agency relationship with Resurrection. Accordingly, counts II and III, sounding in negligent supervision and failure to monitor, remained pending.

¶ 14                    D. Pursuit of Administrative Remedies and Federal
                              Action Refiled and Dismissed

¶ 15     Following the dismissal of the federal case, plaintiff filed a claim with the Department of Health and Human Services under the Act. The agency did not act upon plaintiff's claim within six months of filing. Therefore, on April 6, 2012, plaintiff filed suit in federal court against the United States and Resurrection sounding in one count of negligent supervision and one count of negligence. On May 9, 2012, plaintiff's lawsuit in Cook County circuit court was placed on the bankruptcy stay calendar pending resolution of the new federal case.

¶ 16     The United States and Resurrection each filed motions to dismiss the federal action. The United States argued that plaintiff failed to allege the essential elements of both negligence and negligent supervision and dismissal was proper. Resurrection advanced the same argument as the United States and alternatively argued that the District Court should strike plaintiff's requests for attorney fees and punitive damages because they are not allowed under Illinois law.

¶ 17     On January 17, 2013, the District Court dismissed plaintiff's complaint without prejudice, granting plaintiff leave to file an amended complaint. *Hasbun v. United States*, No. 12 C 2543, 2013 WL 183780 (N.D. Ill. Jan. 17, 2013). The court found that plaintiff failed to sufficiently allege that PCC or Resurrection knew or should have known that: Dr. Tong presented any particular danger to patients; the defendants had a duty to provide a chaperone during gynecological examinations upon request; or plaintiff had requested a chaperone and been denied. *Id.* at *1-6. The District Court granted plaintiff leave to amend to add allegations to meet these requirements. *Id.* at *6.

¶ 18     On February 7, 2013, plaintiff filed a one-count amended complaint sounding only in negligence against the United States and Resurrection. On April 22, 2013, the District Court dismissed the lawsuit with prejudice in its entirety in favor of both the United States and Resurrection. *Hasbun v. United States*, 941 F. Supp. 2d 1011, 1015-17 (N.D. Ill. 2013). The District Court opined that plaintiff's complaint failed to establish that defendants had a duty to plaintiff or that there was any breach of duty. *Id.* No appeal of the District Court's final judgment order was filed in the Seventh Circuit Court of Appeals.

¶ 19                    E. Removal From Stay Calendar, Dismissal, and Final Judgment

¶ 20     On October 15, 2013, plaintiff filed a motion in the circuit court of Cook County to remove the instant matter from the bankruptcy stay calendar. The case was removed from the stay calendar and redocketed under a new case number. On January 13, 2014, the circuit court granted Resurrection's motion to dismiss, dismissing the case with prejudice under the doctrine of *res judicata*. The circuit court found that the instant matter and the federal action

involved the same parties and, even though different theories of relief were pled, the same causes of action because they arose from the same operative facts. Therefore, the April 22, 2013, federal court dismissal of the negligence action with prejudice was a final adjudication on the merits, barring the circuit court's related action.

¶ 21    The circuit court added that defendant immediately moved to dismiss the state claims under the doctrine of *res judicata* following the removal from the stay calendar after the District Court entered final judgment on the federal claims. Accordingly, the trial court found there was no exception to *res judicata* through acquiescence in claim-splitting and *res judicata* applied to bar all decided matters and all matters that could have been decided. Plaintiff filed a notice of appeal, appealing the January 13, 2014, final dismissal order and the June 3, 2011, order dismissing counts I and IV of the complaint.

¶ 22                                    II. ANALYSIS

¶ 23    Resurrection argues that plaintiff has forfeited her appeal of the January 13, 2014, dismissal order of counts II and III (negligence and negligent supervision) under the doctrine of *res judicata*. Plaintiff does not dispute this issue in her briefs and did not present argument on this issue at oral argument. Pursuant to Illinois Supreme Court Rule 341(h)(7) (Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013)), plaintiff has failed to present any argument on this issue and forfeited argument on appeal of the dismissal of these two counts. *United Legal Foundation v. Pappas*, 2011 IL App (1st) 093470, ¶ 15.

¶ 24    Further, Resurrection argues that plaintiff's forfeiture of this argument is fatal to the balance of plaintiff's appeal because the January 13, 2014, order dismissed the counts for negligence and negligent supervision under the theory of *res judicata*. As such, Resurrection asserts that the doctrine of *res judicata* bars all claims that were brought or could have been brought and determined in the action because that final order cannot be challenged. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 337 (1996). Therefore, Resurrection maintains, plaintiff "is now stuck with *res judicata*" and her appeal is moot due to the preclusive effect of the doctrine of *res judicata*. *HealthChicago, Inc. v. Touche, Ross & Co.*, 252 Ill. App. 3d 608, 610 (1993).

¶ 25    "*Res judicata* is an equitable doctrine that is designed to prevent a multiplicity of lawsuits between the same parties where the facts and issues are the same." *Severino v. Freedom Woods, Inc.*, 407 Ill. App. 3d 238, 244 (2010). For *res judicata* to apply, three requirements must be met: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) identity of cause of action; and (3) identity of parties or their privies. *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 9. When these three factors are met, the final judgment rendered on the first cause of action bars any subsequent action between the same party or their privies involving the same claim, demand, or cause of action. *Id*. "A cause of action is defined by the facts that give rise to a right to relief." *Id.* ¶ 10. Even if several theories of recovery arise out of the same facts and same evidence, there is a single cause of action. *Id.*

¶ 26    Therefore, *res judicata* bars not only what was decided in the final judgment in the first action but also whatever could have been decided. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). Furthermore, as a matter of public policy, Illinois follows the general rule that claims or causes of action may not be split and a party cannot advance part of a claim in one action and then sue for the remainder in a second action. *Rein*, 172 Ill. 2d at 340. Under this rule, once final judgment has been entered on part of an action, the party may not refile part of

an action that had been previously voluntarily dismissed. *Piagentini v. Ford Motor Co.*, 387 Ill. App. 3d 887, 890-91 (2009). The rule against claim-splitting is "founded on the premise that litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of lawsuits." *Rein*, 172 Ill. 2d at 340. Following the Restatement (Second) of Judgments, the *Rein* court stated "the rule against claim-splitting does not apply to bar an independent claim of part of the same cause of action if: (1) the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein; (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action; (3) the plaintiff was unable to obtain relief on his claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the equitable implementation of a statutory scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason." *Id.* at 341 (citing Restatement (Second) of Judgments § 26(1) (1980)).

¶ 27    Resurrection argues that the factors for *res judicata* are all met in the instant matter and, under *Rein* and *HealthChicago*, all of plaintiff's claims are barred by the January 13, 2014, *res judicata* order of the circuit court that is now final based on plaintiff's waiver on appeal for failing to brief that issue. In *Rein*, the plaintiffs filed an eight-count complaint on October 11, 1990, asserting various securities violations against the defendants. *Id.* at 327-29. The trial court subsequently dismissed the plaintiffs' counts sounding in rescission, but allowed the remaining common law counts to continue. On August 23, 1991, because the trial court refused to enter a Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Jan. 1, 1989)) finding, the plaintiffs voluntarily dismissed the remaining counts to pursue an appeal of the dismissal of the rescission counts; however, the appellate court affirmed the dismissal. *Rein*, 172 Ill. 2d at 330. Approximately 19 months later, the plaintiffs filed a virtually identical complaint to their original complaint against the defendants and the trial court dismissed that complaint as barred by *res judicata*. *Id.* at 331-32.

¶ 28    That ruling was affirmed by the appellate and supreme courts. *Id.* at 332-34. Our supreme court found that, for the rescission counts, *res judicata* barred reasserting the claims because there was an identity of parties, an identity of cause of action, and that the dismissal of the rescission counts was a final adjudication on the merits. *Id.* at 335-36. The court also found that *res judicata* barred the common law counts, denying the plaintiff's argument that there was no identity of cause of action because "the concept of *res judicata* is broader than plaintiffs suggest" and applied to every matter that might have been determined in the first order, including the common law claims. *Id.* at 338-40. The court further explained that "[t]o avoid the bar of *res judicata*, plaintiffs could have proceeded to a decision on the merits of the common law counts in *Rein I* and, if unsuccessful, appealed both the result regarding the common law counts and the trial judge's order dismissing the rescission counts with prejudice. By failing to proceed on the common law counts in the first action, plaintiffs are barred from attempting to litigate those issues in a subsequent suit." *Id.* at 340.

¶ 29    In *HealthChicago*, the plaintiff separately alleged a tort claim and a contract claim. After the trial court dismissed the tort claim with prejudice, the plaintiff pursued the appeal of the tort count. *HealthChicago*, 252 Ill. App. 3d at 609. The plaintiff did not seek a stay or voluntarily dismiss the contract claim while the appeal of the tort claim was pending. *Id.* While the tort claim was on appeal, the circuit court granted the defendant summary judgment on the

contract claim. No appeal was taken on that claim. *Id.* at 610. This court dismissed the appeal of the tort claim as moot since we could not grant any relief because, with the summary judgment order on the contract claim, "the substantial question between the parties was litigated to a final and now unappealable judgment in the circuit court." *Id.*

¶ 30 Resurrection asserts that with plaintiff's waiver of the appeal of the final judgment *res judicata* order, that order became final. Because the *res judicata* order is now final, it cannot be disturbed, and under *HealthChicago*, *res judicata* applies to bar any action that was brought or could have been brought by plaintiff. Accordingly, Resurrection concludes, no relief can be granted by this court to plaintiff on her other claims and plaintiff's appeal must be dismissed as moot.

¶ 31 Plaintiff counters that *res judicata* does not bar what came before in the case, but is only concerned with preventing a multiplicity of lawsuits. *Piagentini*, 387 Ill. App. 3d at 890. Plaintiff argues that *Rein* is distinguishable because she is not attempting to split a claim. Also, unlike *Rein* and *Piagentini*, plaintiff notes that she never voluntarily dismissed or refiled her cause of action in the circuit court. Furthermore, she contends that her intentional tort claims were not at issue in the January 13, 2014, circuit court order or the April 22, 2013, District Court order and *res judicata* does not apply. In this, her main argument on appeal, plaintiff asserts that the intentional tort claims are not the same cause of action as the negligence counts dismissed in federal court and *res judicata* cannot be applied to foreclose her argument on that issue.

¶ 32 It is arguable that fundamental fairness and plaintiff's ability to litigate the matter are implicated in this case such that *res judicata* should not be applied; however, Resurrection appropriately states that "[t]his case illustrates the grave consequences of filing multiple lawsuits against the same defendant alleging the same cause of action, losing both of them, and then failing to perfect either appeal." The facts of this case and applicable law require application of the doctrine of *res judicata* to bar plaintiff's appeal of the June 3, 2011, dismissal order.

¶ 33 Plaintiff's argument that *res judicata* does not bar what came before in the case is not supported by the facts in this case. It is true that "[t]he assumption underlying [*res judicata*] is that the judgment alleged to have a preclusive effect must have been rendered before the judgment in the case in which preclusion is asserted." *In re Huron Consulting Group, Inc.*, 2012 IL App (1st) 103519, ¶ 23. Further, "[t]he doctrine of *res judicata* need not be applied in a manner inconsistent with fundamental fairness." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 393-94 (2001). However, the June 3, 2011, order dismissing the intentional tort counts from the circuit court was an interlocutory order that did not become final until the circuit court dismissed the remaining counts and entered final judgment on January 13, 2014. The federal court dismissal of April 22, 2013, was final before the circuit court entered the final judgment order now on appeal.

¶ 34 Plaintiff's case was removed to federal court in the first instance and the District Court declined jurisdiction over Resurrection and remanded the matter to the circuit court prior to the circuit court's June 3, 2011, order dismissing the intentional tort counts. When this occurred, the entire matter including all counts and all matters was transferred to the federal court and the circuit court lost jurisdiction to act until the case was remanded. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 154 (1992). The District Court's initial refusal to exercise supplemental jurisdiction over the state law claims against Resurrection and remand operated as a

reservation of the right of plaintiff to pursue her claim against Resurrection in state court. *Schandelmeier-Bartels v. Chicago Park District*, 2015 IL App (1st) 133356, ¶¶ 30-31 (quoting *Nowak*, 197 Ill. 2d at 393-94). If the instant matter ended with this reservation of right for plaintiff, *Nowak* would require that *res judicata* not be applied because "plaintiff did not get [her] day in court." *Nowak*, 197 Ill. 2d at 392.

¶ 35     However, in this case, plaintiff continued to pursue her negligence and negligent supervision claims against both the United States and Resurrection in a separate and distinct federal action. During the pendency of the second federal complaint, the circuit court placed the state action on the stay calendar. The District Court dismissed the second federal action without prejudice and then considered the refiled complaint sounding in negligence against both the United States and Resurrection. The District Court exercised jurisdiction over Resurrection and dismissed the amended complaint with prejudice as to both Resurrection and the United States for plaintiff's failure to establish a duty of the defendants. No appeal was taken in federal court and that order became final.

¶ 36     Several months after the federal order became final, plaintiff removed the state action from the stay calendar. Resurrection promptly moved to dismiss the case under the doctrine of *res judicata*. When the circuit court then dismissed plaintiff's remaining two counts for negligence and negligent supervision against Resurrection based on *res judicata* because of the federal court's earlier dismissal of the negligence action and entered a final judgment order, the previous interlocutory order dismissing the intentional tort claims became final. Therefore, plaintiff explicitly chose to prosecute the same set of operative facts under different theories against Resurrection in both state and federal court.

¶ 37     A similar scenario was examined by our supreme court in *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290 (1998), which was discussed approvingly, but distinguished by the *Nowak* court. *Nowak*, 197 Ill. 2d at 391-93. In *River Park*, the plaintiffs filed a civil rights action pursuant to section 1983 (42 U.S.C. § 1983 (1994)) but failed to assert additional state claims for abuse of governmental power and breach of contract, which the plaintiffs raised in state court after the federal action was dismissed. *River Park*, 184 Ill. 2d at 297-98. The *River Park* court affirmed the dismissal of the state claims based on *res judicata*.

¶ 38     Because federal courts are entitled to exercise supplemental jurisdiction over pendent state claims that are part of the same case or controversy, the court noted that the plaintiffs could have brought the state claims in federal court. *Id.* at 317-18. Since these claims "could have been decided" by the federal court, the plaintiffs should have raised them in federal court, which could have refused to exercise supplemental jurisdiction allowing for future state action, or risk them being barred under the doctrine of *res judicata*. (Internal quotation marks omitted.) *Id.* at 318. The court rejected the plaintiffs' claim that they were caught in a "Catch-22" situation because the plaintiffs brought it on themselves and plaintiffs could not pursue the same cause of action in both state and federal courts. *Id.* at 318-19.

¶ 39     In this case, the same operative facts support all theories of recovery and therefore constitute the same cause of action. *Wilson*, 2012 IL 112898, ¶ 25. As the *Rein* court advised, plaintiff could have proceeded to a decision on the merits on all counts in either the circuit court or District Court and carried through on appeal of both orders. Following *River Park*, plaintiff also could have raised all claims before the federal court with the possibility of the state counts being remanded, effectively reserving plaintiff's right to pursue them. However, plaintiff decided instead to attempt to pursue the same cause of action in both courts. Despite

the District Court's initial refusal to exercise supplemental jurisdiction over Resurrection and remand, plaintiff continued to pursue relief in federal court, which exercised supplemental jurisdiction over Resurrection in the second case and dismissed the case with prejudice.

¶ 40　　Moreover, plaintiff failed to properly present any argument that the dismissal pursuant to the doctrine of *res judicata* was in error. As explained above, plaintiff forfeited this argument and the circuit court properly granted Resurrection's motion to dismiss. Accordingly, the doctrine of *res judicata* bars plaintiff from attempting to litigate the issues that were resolved or could have been resolved in the District Court in a subsequent suit, and no relief can be granted to plaintiff.

¶ 41　　Therefore, because the District Court resolved all issues, we cannot consider plaintiff's arguments that the circuit court erred in entering the June 3, 2011, order dismissing counts I and IV. We also do not consider plaintiff's argument that this court should depart from the clear precedent in Illinois that, as a matter of law, acts of sexual assault are not within the scope of employment. See *Deloney*, 281 Ill. App. 3d at 783; *Stern v. Ritz Carlton Chicago*, 299 Ill. App. 3d 674, 679-81 (1998); *Randi F.*, 170 Ill. App. 3d at 967. We are unable to grant plaintiff relief and we must dismiss her appeal.

¶ 42　　　　　　　　　　　　　III. CONCLUSION

¶ 43　　For the reasons stated, we dismiss plaintiff's appeal.

¶ 44　　Appeal dismissed.